# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JARUE LAWSON** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **PAUL K. SMEAL, et al.** | : | **NO. 09-0024** |

## REPORT AND RECOMMENDATION

L. FELIPE RESTREPO                                                JUNE 18, 2010
UNITED STATES MAGISTRATE JUDGE

Before the Court is a Petition for Writ of Habeas Corpus filed by Jarue Lawson pursuant

to 28 U.S.C. § 2254. Petitioner is currently incarcerated at the State Correctional Institution in

Huntingdon, Pennsylvania ("SCI-Smithfield"). For the reasons which follow, the habeas petition

should be denied and dismissed.

## 1. BACKGROUND AND PROCEDURAL HISTORY

In its Memorandum Opinion affirming the denial of post conviction relief, the Superior

Court of Pennsylvania set forth the facts underlying this case:

> On December 10, 1997, Lawson was arrested in connection with a
> shooting in Pottstown Borough, Montgomery County which rendered
> the victim[, a minor,] permanently paralyzed. Lawson was charged
> with attempted murder, aggravated assault, recklessly endangering
> another person, possessing an instrument of crime, and criminal
> conspiracy. At trial, the victim, an eyewitness, and Lawson's co-
> defendant, Kevin Grayson ("Grayson"), testified that Lawson shot the
> victim. The testimony further established that Grayson and the victim
> argued; that Grayson shot at the victim several times, but missed; and
> that Lawson interjected and chased and ultimately shot the victim
> using a handgun previously given to him by Grayson.

See Commonwealth v. Lawson, No. 2475 EDA 2007, Mem. Op. at 1-2 (Pa. Super. Aug. 28, 2008); Commonwealth v. Lawson, No. 2983 EDA 2003, Mem. Op. at 2 (Pa. Super. Aug. 30, 2004). On January 20, 2000, following a jury trial, Lawson was found guilty of the aforementioned crimes, and on April 4, 2000 he was sentenced to an aggregate of twenty to forty (20-40) years in prison, followed by five (5) years probation. Id. at 2. No direct appeal was taken. Id.

On January 29, 2001, Lawson filed a petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-46, seeking reinstatement of his direct appeal rights nunc pro tunc, which the PCRA Court granted. See Pa. Super. Ct. Op. 8/28/08, at 2. On August 30, 2004, the Superior Court affirmed Lawson's judgment of sentence, and the Supreme Court of Pennsylvania denied allowance of appeal on September 14, 2005, id. at 2. See Commonwealth v. Lawson, 863 A.2d 1226 (Pa. Super. 2004) (table), allocatur denied, 882 A.2d 1005 (Pa. 2005) (table).

Lawson filed another PCRA petition on June 26, 2006. See Pa. Super. Ct. Op. 8/28/08, at 2. Although counsel was initially appointed, counsel was subsequently permitted to withdraw after finding there were no issues of merit to address. Id. at 2-3. Lawson filed a pro se motion to vacate his sentence and a request for a new trial. Id. at 3. On August 27, 2007, the PCRA Court dismissed Lawson's PCRA petition and motion to vacate his sentence, and Lawson appealed to the Superior Court. Id. By Memorandum Opinion dated August 28, 2008, the Superior Court affirmed the denial of PCRA relief. Id. at 5-6.

Lawson thereafter filed this federal habeas petition. The § 2254 petition raises the following grounds for relief: (1) ineffective assistance of appellate counsel "for failing to raise

trial counsel's ineffectiveness, for failing to object to and preserve trial court's amending the Bill of Information, in effect, with the charge 'Conspiracy at Murder' via verdict sheet and read as 'Conspiracy to Commit Murder' via jury instructions"; (2) insufficient evidence at trial to support a guilty verdict on criminal conspiracy; (3) ineffective assistance of trial counsel for "failing to conduct a reasonable pretrial investigation . . . Specifically, trial counsel failed to properly inform petitioner of his maximum sentencing exposure to all charges, before petitioner rejected the Commonwealth's plea offer"; and (4) "petitioner's sentence was disproportionate to other sentences for the same conduct." See Hab. Pet. ¶ 12(A)-(D) (citing "Attachment A" to Hab. Pet.). The District Attorney of Montgomery County ("respondent") responds that habeas relief is not warranted because Lawson's fourth claim is procedurally defaulted and all of his claims are without merit, in any event.

2. **DISCUSSION**

 **(A) Exhaustion of State Remedies and Procedural Default**

  "It is axiomatic that a federal habeas court may not grant a petition for a writ of habeas corpus unless the petitioner has first exhausted the remedies available in the state courts." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)), cert. denied, 532 U.S. 919 (2001); Toulson v. Beyer, 987 F.2d 984, 986 (3d Cir. 1993). Thus, "habeas petitioners must exhaust available state remedies before seeking relief in federal court." Cone v. Bell, 129 S. Ct. 1769, 1780 (2009). Specifically, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45

(1999); see Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001), cert. denied, 535 U.S. 957

(2002).

Requiring exhaustion of state remedies "addresses federalism and comity concerns by

'afford[ing] the state courts a meaningful opportunity to consider allegations of legal error

without interference from the federal judiciary.'" Lambert, 134 F.3d. at 513 n.18 (quoting

Toulson, 987 F.2d at 986). Although the exhaustion rule is a matter of comity and not

jurisdiction, it "should be strictly adhered to because it expresses respect for our dual judicial

system." Caswell v. Ryan, 953 F.2d 853, 857 (3d Cir. 1992) (quoting Landano v. Rafferty, 897

F.2d 661, 668 (3d Cir. 1990)), cert. denied, 504 U.S. 944 (1992); see also Burkett v. Love, 89

F.3d 135, 137 (3d Cir. 1996) ("Pursuing state remedies is not a mere formality.").

The petitioner has the burden of proving all facts entitling him to a discharge from

custody as well as demonstrating that he has met all procedural requisites entitling him to relief.

Brown v. Cuyler, 669 F.2d 155, 157 (3d Cir. 1982). Thus, "[t]he habeas petitioner bears the

burden of proving that he has exhausted available state remedies." Toulson, 987 F.2d at 987.

In this case, petitioner's first claim challenges counsel's failure to object to the trial

court's jury instruction and verdict sheet on conspiracy, which petitioner claims, "amend[ed]" the

"Bill of Information, in effect." See Hab. Pet. ¶ 12(A) (citing "Attachment A" to Hab. Pet. at 1).

On appeal from the denial of PCRA relief, Lawson raised the following claim:

> Was PCRA counsel ineffective for failing to raise the claim that
> trial counsel rendered ineffective assistance in violation of Article
> I, § 9 of the Pennsylvania Constitution, and the Sixth and
> Fourteenth Amendment of the United States Constitution, where he
> failed to object to the trial court's erroneously amending the bill of
> information with the charges of "conspiracy at murder" and
> "conspiracy to commit murder?"

4

See Pa. Super. Ct. Op. 8/28/08, at 3-4 (quoting Appellant's Br. at 5).[1] In affirming the denial of

post-conviction relief, the Superior Court "adopt[ed] the PCRA court's well-reasoned and well-

articulated opinion" and addressed the underlying claim that "counsel allowed the jury to convict

him of multiple counts of conspiracy when the criminal information set forth only one count of

conspiracy." Id. at 4. Therefore, to the extent that Lawson raises that underlying claim in his §

2254 petition, his first claim is properly exhausted. See id.; see also Commonwealth v. Lawson,

No. CP-46-CR-0013440-1998, Mem. Op. at 3-4 (C.P. Montgomery County July 24, 2007).

Lawson's second claim alleges insufficient evidence to support his conviction of criminal

conspiracy. See Hab. Pet. ¶ 12 (citing "Attachment A" to Hab. Pet.); Attachment A to Hab. Pet.

at 3-5. This claim is properly exhausted as the Pennsylvania courts addressed it on Lawson's

reinstated direct appeal. See Pa. Super. Ct. Op. filed 8/30/04, at 9 ("[Lawson's] underlying issue

challenges the sufficiency of the evidence to support his conviction of criminal conspiracy.").

Petitioner's third claim alleges that counsel "failed to properly inform [him] of his

maximum sentencing exposure to all charges, before petitioner rejected the Commonwealth's

plea offer." See Attachment A to Hab. Pet. at 5-6. In his reinstated direct appeal, Lawson

asserted ineffective assistance of counsel "in that [counsel] did not sufficiently review the

exposure [petitioner] faced prior to rejecting the Commonwealth's plea offer." See Pa. Super.

Ct. Op. filed 8/30/04, at 4. In denying this claim, the Superior Court agreed with the trial court

---

[1]To the extent that Lawson's habeas claim alleges ineffective assistance of PCRA counsel or a violation of state law, that claim is not cognizable in a § 2254 petition. See 28 U.S.C. § 2254(I) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); § 2254(a) (the Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

and found it without merit.  Id. at 6-7.

Thus, it appears that Lawson's first three claims have been properly exhausted in the Pennsylvania courts.  See Pa. Super. Ct. Op. filed 10/22/08, at 4-13.  In particular, his first claim was raised and addressed during PCRA proceedings, see Pa. Super. Ct. Op. 8/28/08, at 3-4, and his second and third claims were raised and addressed in his reinstated direct appeal, see Pa. Super. Ct. Op. 8/30/04, at 6-7, 9.  Therefore, the Court may review the merits of these claims under the applicable legal standard.  See O'Sullivan, 526 U.S. at 844-45.

Petitioner's final habeas claim alleges that his "sentence was disproportionate to other sentences for the same conduct [and] therefore unreasonable because reasons given to support [the] sentence don't justify [the] sentence. . . . [i]n violation of petitioner's 8th [A]mendment rights."  See Attachment A to Hab. Pet. at 6.  Respondent argues that this claim was procedurally defaulted by petitioner's abandonment of the claim in state court.  See Respondent's Br. 17.  Specifically, respondent argues that "[p]etitioner waived his claim that his sentence was unreasonable when it was not included in his second PCRA petition or his appeal from the Order of the PCRA court dismissing that petition."[2]  Id.

As pointed out by the Superior Court in affirming the judgment of sentence on petitioner's reinstated direct appeal, petitioner's brief on appeal included the following claim: "Was trial counsel ineffective for failing to file a petition for reconsideration of sentence when [he] was given a lengthy sentence and was sentenced well above the sentencing guidelines on the aggravated assault conviction?"  See Pa. Super. Ct. Op. filed 8/30/04, at 5 (quoting Appellant's

---

[2]Respondent further argues that this claim is without merit, in any event.  See Respondent's Br. 17.

Br. 3). The Superior Court concluded that this claim was without merit, finding that "[t]he trial court opinion comprehensively discusse[d] and properly dispose[d] of" this claim. Id. at 6-7 (citing Commonwealth v. Jarue Lawson, Crim. No. A3440-98, Mem. Op. at 11-13 (C.P. Montgomery County Nov. 24, 2003)). Thus, to the extent that Lawson raises this claim in his § 2254 petition, the claim has been properly exhausted, and this Court may review its merits.[3]

### (B) Legal Standard Under 28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. 104-132 (Apr. 26, 1996), precludes federal habeas relief to "a person in custody pursuant to the judgment of a State court" based on "any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim"

> (1) resulted in a decision that was **contrary to**, or involved an **unreasonable application** of, clearly established Federal law, as determined by the Supreme Court of the United States,[4] or

---

[3]To the extent that any of Lawson's habeas claims may be construed as raising claims other than those fairly presented to the Superior Court, these claims are procedurally defaulted since a subsequent PCRA petition would be time-barred. See 42 Pa. C.S.A. § 9545(b)(1) ("[a]ny petition under this subchapter, **including a second or subsequent petition**, shall be filed within one year of the date the judgment becomes final") (emphasis added); Walker v. Frank, 56 Fed. Appx. 577, 578 n.1 (3d Cir. 2003), cert. denied, 540 U.S. 836 (2003); see also 42 Pa. C.S.A. § 9545 (b)(2) ("Any petition invoking an exception [to the PCRA's 1-year filing requirement] shall be filed within 60 days of the date the claim could have been presented"). Since petitioner fails to show "cause and prejudice" or a "fundamental miscarriage of justice" to excuse such a default, the merits of any defaulted claims may not be reviewed. See Cristin v. Brennan, 281 F.3d 404, 409 n.5 (3d Cir. 2002) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)), cert. denied, 537 U.S. 897 (2002); see also Werts v. Vaughn, 228 F.3d 178, 194 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001).

[4]"Clearly established Federal law, as determined by the Supreme Court of the United States" refers to the "holdings, as opposed to the dicta" of the Supreme Court's decisions as of the time of the relevant state court decision. Yarborough v. Alvarada, 124 S. Ct. 2140, 2147

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented
in the State court proceeding.

28 U.S.C. § 2254(d) (footnote added) (emphases added); see Duncan v. Morton, 256 F.3d 189,

196 (3d Cir.), cert. denied, 122 S. Ct. 269 (2001).  In Williams v. Taylor, the Supreme Court

interpreted the standard under § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by [the Supreme] Court on a question of law[5] or if the state court
> decides a case differently than [the Supreme] Court has on a set of
> materially indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if the
> state court identifies the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies that principle
> to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13 (footnote added).

The Court of Appeals for the Third Circuit observed in Matteo v. Superintendent, SCI

Albion, 171 F.3d 877 (3d Cir.) (en banc), cert. denied, 528 U.S. 824 (1999),[6] that to prove

entitlement to habeas relief under the "contrary to" provision of § 2254(d)(1), "it is not sufficient

for the petitioner to show merely that his interpretation of Supreme Court precedent is more

plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court

_____

(2004) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)).

[5]Thus, "[a] state-court decision is contrary to [the Supreme Court's] clearly established
precedents if it applies a rule that contradicts the governing law set forth in [the Supreme
Court's] cases."  Brown v. Payton, 125 S. Ct. 1432, 1438 (2005) (citing Williams, 529 U.S. at
405); see Early v. Packer, 123 S. Ct. 362, 365 (2002).

[6]Prior to the Supreme Court's decision in Williams v. Taylor, the Court of Appeals for the
Third Circuit construed the standard of review under § 2254(d)(1) in Matteo.  The Third Circuit
has since stated that its opinion in Matteo is in accord with the Supreme Court's decision in
Williams.  See Werts, 228 F.3d at 197.

precedent *requires* **the contrary outcome**." Matteo, 171 F.3d at 888 (emphases added); see

Werts, 228 F.3d at 197. "This standard precludes granting habeas relief solely on the basis of

simple disagreement with a reasonable state court interpretation of the applicable precedent." Id.

at 197 (quoting Matteo, 171 F.3d at 888).

When making the "unreasonable application" inquiry, the federal habeas court should ask

"whether the state court's application of clearly established federal law was objectively

unreasonable." Williams, 529 U.S. at 409; see Chadwick v. Janecka, 312 F.3d 597, 607 (3d Cir.

2002) (citing Williams, 529 U.S. at 409, and Matteo, 171 F.3d at 891). In applying the

"unreasonable application" provision of § 2254, "[t]he federal habeas court should not grant the

petition unless the state court decision, evaluated objectively and on the merits, resulted in **an**

**outcome that cannot reasonably be justified under existing Supreme Court precedent.**"

Matteo, 171 F.3d at 891 (emphasis added); see Chadwick, 312 F.3d at 607 (citing Matteo, 171

F.3d at 891); Werts, 228 F.3d at 197.

The Supreme Court stressed that an application of federal law **may be incorrect but still**

**not unreasonable.** Williams, 529 U.S. at 411; see Duncan, 256 F.3d at 196; Werts, 228 F.3d at

196. Thus, mere disagreement with a state court's conclusions is insufficient to justify relief.

Williams, 529 U.S. at 411; Matteo, 171 F.3d at 891. In determining whether the state court's

application of the Supreme Court precedent is objectively reasonable, habeas courts may consider

the decisions of federal courts of appeals and district courts. Id. at 890; Ross v. Vaughn, 2001

WL 818359, at *4 (E.D. Pa. Jan. 16, 2001) (citing Matteo).

With regard to findings of fact, § 2254(e)(1) provides that a state court's determination of a

factual issue[7] is "**presumed to be correct**" and further provides that a habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (emphasis added); see Chadwick, 312 F.3d at 607; Duncan, 256 F.3d at 196; Werts, 228 F.3d at 196. "This presumption applies to the factual determinations of both state trial and appellate courts." Duncan, 256 F.3d at 196; see Stevens v. Delaware Correctional Ctr., 295 F.3d 361, 368 (3d Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)). Furthermore, under Supreme Court and Third Circuit precedent, the presumption of correctness under the habeas statute applies to **implicit** factual findings as well as the express findings of the state courts. See Campbell v. Vaughn, 209 F.3d 280, 285-86, 290 (3d Cir. 2000), cert. denied, 531 U.S. 1084 (2001).

### (C)    Ineffective Assistance Claims

Petitioner's first and third claims allege ineffective assistance of counsel. The merits of ineffective assistance claims are governed by the Supreme Court's holding in Strickland v. Washington, 466 U.S. 668 (1984). See Williams, 529 U.S. at 390. In Strickland, the Supreme Court set forth the now-familiar standard for reviewing such claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

---

[7]Factual issues are "basic, primary or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators.'" Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting Townsend v. Sain, 372 U.S. 293 (1963)).

Strickland, 466 U.S. at 687; see Williams, 529 U.S. at 390.[8]

To establish that counsel's assistance was deficient, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Judicial scrutiny of an attorney's performance in applying the deficiency prong of the Strickland test is not exacting. Id.; see also Affinito v. Hendricks, 366 F.3d 252, 258 (3d Cir. 2004), cert. denied, 543 U.S. 1057 (2005). There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. at 690. In this regard, Strickland observed:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. **A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight**, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Id. at 689 (emphasis added).

In meeting the prejudice prong of an ineffective assistance claim: "Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see Williams, 529 U.S. at 391. In a guilty plea case, a petitioner only satisfies the prejudice requirement by demonstrating

---

[8]An inquiry into effective assistance of counsel is a mixed question of law and fact. Berryman, 100 F.3d at 1094. Therefore, an ineffective assistance claim "require[s] the application of a legal standard to the historical-fact determinations." Id. (quoting Townsend, 372 U.S. at 310 n.6).

11

that there was a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir.) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)), cert. denied, 531 U.S. 1003 (2000).

Although Strickland discussed a two-prong test in evaluating claims of ineffective assistance, it is unnecessary for a court to address both components of the inquiry if the petitioner makes an insufficient showing on one. Strickland, 466 U.S. at 694. Therefore, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id.

In addressing petitioner's ineffective assistance claims in this case, the Pennsylvania courts applied the legal standard under Pennsylvania law. See Pa. Super. Ct. Op. filed 8/28/08, at 5 (citing Commonwealth v. Spotz, 896 A.2d 1191, 1210 (Pa. Super. 2006)); Pa. Super. Ct. Op. filed 8/30/04, at 8-9 (citing Commonwealth v. Todd, 820 A.2d 707, 711 (Pa. Super. 2003), allocatur denied, 833 A.2d 143 (Pa. 2003)); see also Common Pleas Ct. Op. 11/24/03, at 5 (citing Commonwealth v. Millward, 830 A.2d 991, 994 (Pa. 2003)). The Third Circuit has "ruled that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland." See Jacobs v. Horn, 395 F.3d 92, n.9 (3d Cir. 2005) (citing Werts, 228 F.3d at 204), cert. denied, 126 S. Ct. 479 (2005); see also Werts, 228 F.3d at 204 (finding that application of Pennsylvania's standard governing ineffective assistance claims was not contrary to established Supreme Court precedent); Brand v. Gillis, 210 F. Supp.2d 677, 684 (E.D. Pa. 2002) (citing Werts) (Pennsylvania standard governing ineffective assistance claims "has been found to be materially identical" to the Strickland test), aff'd, 82 Fed. Appx. 278 (3d Cir. 2003). Furthermore, petitioner has failed to show that "the state court [was] confronted [with] a set of

12

facts that [was] materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrive[d] at a result different from [the Supreme Court's] precedent." See Williams, 529 U.S. at 406. Therefore, the Pennsylvania courts "identifie[d] the correct governing legal principle" in this case, see Williams, 529 U.S. at 412-13, and the standard applied by the state court to Lawson's ineffective assistance claims was not "contrary to" the Supreme Court's well-established rule governing ineffective assistance of counsel. Id. at 405-06; Werts, 228 F.3d at 204; Brand, 210 F. Supp.2d at 684; see also Early v. Packer, 123 S. Ct. 3, 365 (2002) (complying with AEDPA does not require state-court decision to cite relevant Supreme Court cases – "indeed it does not even require **awareness** of the [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

Lawson's first claim challenges the assistance of counsel "for failing to object to and preserve trial court's amending the Bill of Information, in effect, with the charge 'Conspiracy at Murder' via verdict sheet and read as 'Conspiracy to Commit Murder' via jury instructions." The Superior Court found Lawson's underlying claim lacked arguable merit and "adopted the PCRA court's well-reasoned and well-articulated opinion." See Pa. Super. Ct. Op. filed 8/28/08, at 4-5. In addressing petitioner's claim, the PCRA Court found:

> [B]ills of information were filed against [Lawson] on August 6, 1998, and those bills were never amended . . . [Lawson] apparently contends that the verdict sheet and jury instructions were defective and erroneous because he was allegedly "indicted" for a single conspiracy but the jury was instructed to deliberate on, and did deliberate on, whether he was guilty of conspiracy to commit murder, aggravated assault, simple assault, recklessly endangering another person and possessing instruments of crime. In this regard, the verdict sheet and jury charge [were] consistent with the bills of information and Pennsylvania law. "Under Pennsylvania law, a single conspiracy may have multiple criminal objectives."

> Commonwealth v. Savage, 566 A.2d 272, 276 (Pa. Super. 1989)
> (citing 18 Pa. C.S.A. 903(c)).  Indeed, given the single, tacit
> agreement that established conspiracy in this case, [Lawson] could
> only have been found guilty of a single conspiracy.  See
> Commonwealth v. Barnes, 871 A.2d 812, 820 (Pa. Super. 2005) ("for
> appellant to be convicted of three counts of conspiracy, there must be
> separate agreements or separate conspiratorial relationships, to
> support each conviction") . . . [I]t is apparent that [Lawson] was not
> found guilty of multiple conspiracies, but rather was found guilty of
> a single conspiracy with multiple criminal objectives.  Therefore, this
> claim carries no arguable merit, and counsel's inaction did not
> prejudice [Lawson].

Id. at 5 (quoting Common Pleas Ct. Op. 7/24/07, at 3-4).[9]

Under § 2254(e), this Court must presume that the state court's determinations of the

factual issues are correct since petitioner has not rebutted the presumption by clear and

convincing evidence.  See 28 U.S.C. § 2254(e)(1); Duncan, 256 F.3d at 196; Werts, 228 F.3d at

196.  This presumption of correctness "applies to the factual determinations of both state trial and

appellate courts," see Duncan, 256 F.3d at 196; see Dickerson, 90 F.3d at 90, and to implicit as

well as express findings of the state courts, see Campbell, 209 F.3d at 285-86, 290.

In addition, "it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions.  In conducting habeas review, a federal court is limited to

deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Therefore, this Court may not reexamine the

Pennsylvania court's finding, for example, that the trial court's verdict sheet and jury instructions

---

[9]In that the PCRA Court found that "bills of information were filed against defendant on
August 6, 1998, and **those bills were never amended**," see Common Pleas Ct. Op. 7/24/07, at 3
(emphasis added), the Court further found that to the extent that petitioner claimed that trial
counsel failed to object to the amendment of his "indictment," that claim is not of arguable merit.
Id.

were proper under Pennsylvania law with regard to the challenged conspiracy conviction.  See Pa. Super. Ct. Op. filed 8/28/08, at 5 (quoting Common Pleas Ct. Op. 11/24/03, at 5); Common Pleas Ct. Op. 11/24/03, at 5 (citing Pennsylvania caselaw).

In light of the state court's factual findings and the strong presumption that counsel rendered adequate assistance, see Strickland, 466 U.S. at 690, petitioner failed to demonstrate that "counsel's representation fell below an objective standard of reasonableness," id. at 688. Therefore, he failed to satisfy the deficient performance prong of the standard for ineffective assistance.  See id.  Furthermore, petitioner fails to show that there was a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.  See Strickland, 466 U.S. at 694; see also Williams, 529 U.S. at 391; see also Weeks, 219 F.3d at 257 (quoting Hill, 474 U.S. at 59).  Thus, he also fails to satisfy the prejudice requirement.

It cannot properly be said that the state court's adjudication of petitioner's claim "resulted in an outcome that cannot reasonably be justified."  See Matteo, 171 F.3d at 891.  Nor can it be said that "Supreme Court precedent requires an outcome contrary to that reached by" the state court.  See id.  Therefore, the state court's adjudication of petitioner's claim did not "result[] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  See 28 U.S.C. § 2254(d)(1); see also Williams, 529 U.S. at 404-05; Matteo, 171 F.3d at 891.  Petitioner also does not demonstrate that the state court's adjudication of his claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d)(2).  Accordingly, his first claim does not warrant

habeas relief.

Petitioner's third claim challenges his counsel's advice prior to petitioner's rejection of the Commonwealth's plea offer. See Attachment A to Hab. Pet. at 5. As explained, the claim which was properly exhausted in the state courts as presented to Pennsylvania's Superior Court was ineffective assistance of counsel "in that [counsel] did not sufficiently review the exposure [petitioner] faced prior to rejecting the Commonwealth's plea offer." See Pa. Super. Ct. Op. filed 8/30/04, at 4; see also supra note 3.

The Supreme Court has stated that where "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill, 474 U.S. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). The Court further noted that "[t]he longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Id. at 56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

On petitioner's reinstated direct appeal, the Superior Court found petitioner's claim without merit "on the basis of the trial court opinion." See Pa. Super. Ct. Op. filed 8/30/04, at 6-7 (citing Common Pleas Ct. Op. filed 11/24/03, at 5-6). In denying relief on petitioner's claim, the trial court found:

> In this case, trial counsel negotiated a plea offer of eight to 20 years imprisonment on the charge of attempted murder. N.T. [7/31/00,] at 20. Counsel discussed the offer with [petitioner], but the conversation was brief because defendant maintained his innocence and was eager to take the case to trial. Id. at 21-22. Counsel told

defendant that the standard sentencing range under the circumstances would be 72 to 240 months.  Id.  Counsel also opined, based upon his experience as an Assistant District Attorney, that defendant would likely receive a sentence of ten to twelve years, "but that his sentence could be in excess of 20 years.["]  Id. at 22.  Counsel explained that he would likely not be paroled at the expiration of his minimum sentence.  Id. at 22-23.

Counsel admitted that he may not have discussed the maximum sentences that could be imposed for any of the offenses, id. at 23, and that he did not tell defendant the sentences could be aggregated, id. at 28.  However, even though counsel failed to inform defendant of these details, he did satisfy the standard in Napper [10] by giving him a "candid estimate of the probable outcome" if he were to go to trial.

See Common Pleas Ct. Op. filed 11/24/03, at 5-6 (footnote added).[11]

The trial court noted that "counsel has a duty to explain the advantages and disadvantages of accepting or rejecting a plea offer," see Common Pleas Ct. Op. filed 11/24/03, at 5 (quoting Commonwealth v. Boyd, 688 A.2d 1172, 1174-75 (1997), overruled on other grounds, Commonwealth ex rel. Dadario v. Goldberg, 773 A.2d 126 (2001)), and "to give the defendant a 'candid estimate of the probable outcome' if the defendant were to go to trial," id. at 5 (quoting Napper, 385 A.2d at 524); see Napper, 385 A.2d at 524 (quoting ABA Project on Standards for Criminal Justice: Standards Relating to the Prosecution Function and the Defense Function (Approved Draft 1971)).  The Court found relief on petitioner's ineffective assistance claim was

_____

[10]See Commonweatlh v. Napper, 385 A.2d 521, 524 (Pa. Super. 1978).

[11]A review of the record reflects that petitioner's counsel testified that he did discuss with petitioner "the fact that if we went to trial, sentences generally could be aggregated or consecutive sentences could be imposed by the Court," but petitioner "was interested in finding out what [his counsel] thought the Court might impose as a sentence if he were convicted."  N.T. 7/31/00, at 22.  Counsel's advice was "based on [his] experience in these kinds of cases in having worked in the District Attorney's Office and seen a lot of these kinds of cases - - sentencings [sic] in these kind of cases."  Id.

17

not warranted in that counsel conveyed the terms of the plea offer, explained the standard sentencing range under the circumstances, gave petitioner a "candid estimate of the probable outcome" if he were to go to trial, based on counsel's experience as an Assistant District Attorney, as well as explaining that the sentence could be well more than his candid estimate and in excess of 20 years, and that petitioner likely would not be paroled at the end of his minimum sentence.  See Common Pleas Ct. Op. filed 11/24/03, at 6.

As explained, this Court must presume that the state court's determinations of the factual issues, including both implicit as well as express findings, see Campbell, 209 F.3d at 285-86, 290, are correct since petitioner has not rebutted the presumption by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); Duncan, 256 F.3d at 196; Werts, 228 F.3d at 196.  In addition, there is a strong presumption that counsel rendered adequate assistance, see Strickland, 466 U.S. at 690.

However, in this case, it is unnecessary to determine whether the "state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing **Supreme Court** precedent," see Matteo, 171 F.3d at 891 (emphasis added); see also Chadwick, 312 F.3d at 607 (citing Matteo, 171 F.3d at 891); Werts, 228 F.3d at 197; cf. Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009) (noting "the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard," the Supreme Court noted that "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."). Even assuming that petitioner was able to satisfy the first prong of the ineffective assistance test, habeas relief would still not be available on this claim in that he is unable to satisfy the second

prong of the Strickland test.

Arguably, the Pennsylvania courts' decisions can be interpreted as concluding that Lawson was not prejudiced by his counsel's conduct in addition to the finding that counsel's conduct was not constitutionally deficient under the circumstances. See, e.g., Common Pleas Ct. Op. filed 11/24/03, at 5-6 (Counsel's discussion with petitioner "was brief **because** [petitioner] **maintained his innocence and was eager to take the case to trial**.) (emphases added). However, it is unnecessary to determine whether AEDPA's deferential standard applies to the prejudice prong analysis, since "even if AEDPA deference does not apply, [Lawson] cannot show prejudice under de novo review, the more favorable standard of review," see Berghuis v. Thompkins,_ _ U.S. _ _, 2010 WL 2160784, *14 (June 1, 2010); see also id. (citing § 2254(a)) ("[c]ourts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review . . . because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review"). Moreover, whether this court applies the presumption of correctness to the state court's implicit and express factual findings under § 2254(e)(1) or not,[12] see Campbell, 209 F.3d at 285-86, 290, petitioner is unable to satisfy the prejudice prong of his ineffective assistance claim by demonstrating "that there is a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different," see Strickland, 466 U.S. at 694; see also Williams, 529 U.S. at 391.

As explained in Strickland, it is unnecessary for a court to address both components of the ineffective assistance inquiry if the petitioner makes an insufficient showing on one.

---

[12]It is noted that petitioner has failed to rebut that presumption by clear and convincing evidence, see 28 U.S.C. § 2254(e)(1); Chadwick, 312 F.3d at 607; Duncan, 256 F.3d at 196.

Strickland, 466 U.S. at 694.  Therefore, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  Id.

The record evidence reveals, as the state court found, that petitioner not only "maintained his innocence" but was "eager to take the case to trial."  See Common Pleas Ct. Op. filed 11/24/03, at 6.  His counsel testified that petitioner was "unwaveringly and steadfastly maintaining his innocence,"[13] see N.T. 7/31/00, at 19, and that "this was a case that was in both of our minds . . . headed for trial."  Id. at 29.  Counsel further testified that petitioner "had maintained his innocence and was clearly anxious to have his day in court and would like to have a trial."  Id. at 21-22.  Furthermore, as the trial court pointed out, counsel had advised petitioner that "based upon his experience as an Assistant District Attorney, [petitioner] would likely receive a sentence of ten to twelve years."  See Common Pleas Ct. Op. filed 11/24/03, at 5.  Moreover, Lawson's habeas petition merely alleges that had counsel not rendered the alleged ineffective assistance, the "outcome **could** have been different."  See Attachment A to Hab. Pet.

---

[13]Counsel further testified that it was **because** of petitioner's insistence on his innocence that petitioner had not previously sought a plea offer from the Commonwealth and that it was at counsel's suggestion that a request for an offer was made.  See N.T. 7/31/00, at 20 ("[A]fter I became involved in the case [approximately six months prior to trial], I learned that [petitioner] was, you know, unwaveringly and steadfastly maintaining his innocence and **consequently** had not sought . . . an offer from the Commonwealth [during the time he had been represented by two other attorneys].  I thought that he should have the benefit of knowing where [the Commonwealth] stood.  And so I suggested to him . . . that we go to the Commonwealth and get an offer. . .") (emphasis added).  Counsel also explained that, given petitioner's strong feelings on the issue, counsel **expected** him to reject the offer.  Id. at 24 ("And I felt comfortable after our discussion that he was adequately informed to reject that plea offer, **as I expected that he would**.  He and I had discussed the fact that a very short sentence - - and by that I mean a time-served sentence; he had been in, I think, approximately 187 months - - or a couple of years would be a sentence that might be palatable for him.  But given the fact that he had, as I said, maintained his innocence, he was very uncomfortable with the sentence even at the eight-year level.") (emphasis added).

at 6 (emphasis added); see, e.g., Hill, 474 U.S. at 60 (petitioner "failed to allege the kind of 'prejudice' necessary" to satisfy the second half of the <u>Strickland</u> test). In this case, habeas relief is not warranted on this claim since, in the very least, petitioner is unable to satisfy the prejudice prong of the <u>Strickland</u> test.

### (D) Sufficiency of the Evidence

Petitioner alleges insufficient evidence at trial to support a guilty verdict on criminal conspiracy. <u>See</u> Attachment A to Hab. Pet. at 3-5. In finding petitioner's claim without merit on his reinstated direct appeal, the Superior Court of Pennsylvania "agree[d] with the trial court's reasoning and adopt[ed] it as [its] own."[14] <u>See</u> Pa. Super. Ct. Op. filed 8/30/04, at 11. Regarding the sufficiency of the evidence to support the conspiracy conviction, the trial court set forth the pertinent facts:

> The undisputed evidence shows that [petitioner] engaged [the victim, a minor,] by verbally expressing his solidarity with Grayson (petitioner's co-conspirator). This shows that [petitioner] had been able to hear the argument between [the victim] and Grayson, and that he intended to intercede on behalf of Grayson. He did so using a gun that Grayson himself had supplied. And when he did so, Grayson began to follow along. These facts are sufficient to raise an inference that Grayson and [petitioner] were acting in concert under an implied agreement.

<u>Id.</u> at 10-11 (quoting Common Pleas Ct. Op. filed 11/24/03, at 8) (parenthetical added).

---

[14]Unlike petitioner's habeas claim, petitioner presented this claim in the Superior Court in the form of alleging **ineffective assistance of counsel** "in failing to object to the charge of criminal conspiracy going out to the jury as there was no evidence before the jury that a conspiracy existed and that [petitioner], if he acted at all, acted on his own." <u>See</u> Pa. Super. Ct. Op. filed 8/30/04, at 4. However, in denying this claim, the Superior Court and Common Pleas Court addressed the underlying claim of sufficiency of the evidence to support the conviction of criminal conspiracy. <u>Id.</u> at 9-11; Common Pleas Ct. Op. filed 11/24/03, at 8.

In <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), the Supreme Court set forth the applicable standard in a federal habeas corpus proceeding where sufficiency of the evidence was at issue prior to AEDPA taking effect:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction. . . . does not require a court to "ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt." . . . Instead, the relevant question is whether, **after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.**

<u>Id.</u> at 318-19 (citations omitted) (emphases added); <u>see</u> <u>Jackson v. Byrd</u>, 105 F.3d 145, 148 (3d Cir.), <u>cert.</u> <u>denied</u>, 520 U.S. 1268 (1997). The substantive elements of the offense are defined by state law. <u>Jackson v. Virginia</u>, 443 U.S. at 324 n.16; <u>Flecha v. Shannon</u>, 2005 WL 851066, at *4 (E.D. Pa. Apr. 12, 2005). As the Superior Court pointed out, the Commonwealth may sustain its burden of proving the elements of a crime beyond a reasonable doubt by relying on circumstantial evidence. <u>See</u> Pa. Super. Ct. Op. filed 8/30/04, at 10 (citing <u>Commonwealth v. Spotz</u>, 716 A.2d 580, 592 (Pa. Super. 1998), <u>cert.</u> <u>denied</u>, 526 U.S. 1070 (1999)) ("[I]t is generally difficult to prove an explicit or formal agreement. Therefore, such an agreement may be established inferentially by circumstantial evidence, i.e., the relations, conduct or circumstances of the parties or overt acts on the part of co-conspirators."); <u>see also</u> <u>Medina v. DiGuglielmo</u>, 461 F.3d 417, 432 (3d Cir. 2006) ("To find [the defendant] guilty beyond a reasonable doubt, however, the jury was free to disregard [a witness's] testimony and to **rely on the circumstantial evidence of guilt** presented by the other witnesses.") (emphasis added), <u>cert.</u> <u>denied</u>, 551 U.S. 1115 (2007).

"[T]he determination of the credibility of witnesses, the resolution of conflicts in the evidence, and the drawing of reasonable inferences from the proven facts all fall within the exclusive province of the jury," and they are therefore "beyond the scope of permissible federal habeas review."  Id. (citing Schlup v. Delo, 513 U.S. 298 (1995)).   Finally, in that deference to the state court's Jackson determination is now required, AEDPA has limited a habeas court's role in reviewing a claim that the evidence adduced at trial was insufficient to support a conviction; "a de novo review is not appropriate."  Flecha, 2005 WL 851066, at *4; see Lecount v. Patrick, 2006 WL 2540800, at *14 (E.D. Pa. Aug. 30, 2006).

In addressing petitioner's claim on direct appeal, the Pennsylvania courts applied the Pennsylvania equivalent of the Jackson v. Virginia standard.  See Pa. Super. Ct. Op. filed 8/39/04, at 9 (citing Commonwealth v. Ogrod, 839 A.2d 294, 318 (Pa. 2003), cert. denied, 543 U.S. 1188 (2005)); see also Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992) ("the test for insufficiency of the evidence is the same under both Pennsylvania and federal law"); Smith v. Vaughn, 1997 WL 338851, *7 (E.D. Pa. June 17, 1997).  Thus, the standard applied by the state court in addressing the merits of petitioner's claim did not "contradict[] the governing law set forth in" Jackson v. Virginia, 443 U.S. at 318-19.  See Williams, 529 U.S. at 405-06; Chadwick, 312 F.3d at 607.  Nor does petitioner demonstrate that "the state court confront[ed] a set of facts that [were] materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrive[d] at a result different from [the Supreme Court] precedent."  See Williams, 529 U.S. at 405-06; Chadwick, 312 F.3d at 607.  Therefore, the Pennsylvania court's adjudication of petitioner's claim did not result in a decision that was "contrary to" clearly established federal law, as determined by the Supreme Court of the United

States.  See 28 U.S.C. § 2254(d).

Claims that are mixed constitutional questions of law and fact, such as this claim, "require the application of a legal standard to the historical-fact determinations."  Thompson v. Keohane, 116 S. Ct. 457, 464 (1995) (quoting Townsend v. Sain, 372 U.S. 293, 309 n.6 (1963)); see also Starr v. Mitchell, 2000 WL 1529807, *3 (6th Cir. Oct. 6, 2000) ("Jackson claims are mixed questions of law and fact"), cert. denied, 531 U.S. 1178 (2001); United States ex rel. Howse v. Carter, 1998 WL 422294, at *7 (N.D. Ill. July 22, 1998) (same).  Here, in applying Pennsylvania's equivalent to the Jackson v. Virginia standard, the Pennsylvania courts found the evidence indicated, among other things, that petitioner "engaged [the victim] by verbally expressing his solidarity with Grayson" and interceded on behalf of Grayson using a gun that Grayson himself had supplied and Grayson followed along.  See Pa. Super. Ct. Op. filed 8/30/04, at 10.  "The testimony further established that Grayson and the victim argued; that Grayson shot at the victim several times, but missed; and that [petitioner] interjected and chased and ultimately shot the victim" with the gun provided by Grayson earlier that day, "leaving [the victim] permanently paralyzed."  See Pa. Super. Ct. Op. filed 8/28/08, at 2; Common Pleas Ct. Op. filed 11/24/03, at 3.  The Court concluded that "these facts are sufficient to raise an inference that Grayson and [petitioner] were acting in concert under an implied agreement."  Id. at 8.

With regard to the elements of the crime, the Superior Court observed that, under Pennsylvania law:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or person that they or one or

> more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in planning or commission of such crime or of an attempt or solicitation ro commit such crime.

See Pa. Super. Ct. Op. filed 8/30/04, at 10 (quoting 18 Pa. C.S.A. § 903). The Court pointed out that "[g]enerally, a conspiracy conviction requires proof of (1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of a conspiracy" and further, as explained above, that such an agreement may be established inferentially by circumstantial evidence. Id. at 10 (quoting Spotz, 716 A.2d at 592).

In applying the Pennsylvania equivalent of the Jackson v. Virginia standard, and in viewing the evidence in the light most favorable to the Commonwealth, the Pennsylvania courts reasonably found that a rational trier of fact could have found beyond a reasonable doubt that, see Jackson, 443 U.S. at 318-19, the evidence was sufficient to support petitioner's conviction of conspiracy. See Pa. Super. Ct. Op. filed 8/30/04, at 11 (citing Ogrod, 839 A.2d at 318; Spotz, 716 A.2d at 592). As the Supreme Court stated in Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Therefore, since the substantive elements of the offenses are defined by state law, see Jackson v. Virginia, 443 U.S. at 324 n.16; Flecha, 2005 WL 851066, at *4, this Court must defer to the state court with regard to the elements of the underlying crime. In addition, under § 2254(e)(1), this Court must presume that the state court's factual determinations are correct since petitioner fails to "rebut[] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see Duncan, 256 F.3d at 196; Werts,

228 F.3d at 196.

In light of the factual determinations made by the state court, the Superior Court's denial of petitioner's claim is consistent with federal constitutional requirements. Specifically, the state court reasonably applied the Jackson v. Virginia standard or its equivalent in concluding that there was sufficient evidence to convict petitioner. See Pa. Super. Ct. Op. filed 8/30/04, at 8-11; Common Pleas Ct. Op. filed 11/24/03, at 8.

Petitioner has not demonstrated that Supreme Court precedent "require[d] the contrary outcome." Matteo, 171 F.3d at 888 (emphasis added); see Werts, 228 F.3d at 197. Nor has he shown that the Pennsylvania court decision "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." See Matteo, 171 F.3d at 891; see Chadwick, 312 F.3d at 607 (citing Matteo, 171 F.3d at 891); Werts, 228 F.3d at 197.

Therefore, the state court's adjudication of petitioner's claim did not "result[] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254(d). Accordingly, petitioner's claim of insufficiency of the evidence does not warrant habeas relief. See id.; Smith, 1997 WL 338851, at *8 (applying AEDPA and finding that "the state courts' application of the Jackson standard was within the bounds of reasonableness").

### (E) Petitioner's Sentence

Petitioner's final habeas claim alleges that his "sentence was disproportionate to other sentences for the same conduct [and] therefore unreasonable because reasons given to support [the] sentence don't justify [the] sentence . . . [i]n violation of petitioner's 8th [A]mendment

rights." See Attachment A to Hab. Pet. at 6. The claim which was properly exhausted in the state courts as presented to Pennsylvania's Superior Court was ineffective assistance of counsel "for failing to file a petition for reconsideration of sentence when [petitioner] was given a lengthy sentence and was sentenced well above the sentencing guidelines on the aggravated assault conviction."[15] See Pa. Super. Ct. Op. filed 8/30/04, at 5 (caps omitted); see also supra note 3. However, as explained, insofar as petitioner fairly presented to the state courts the underlying claim that the trial court erred in imposing a sentence outside the guidelines, this Court may review the claim to the extent he presents a cognizable federal habeas claim. See Pa. Super. Ct. Op. filed 8/30/04, at 6-7 (adopting the trial court opinion with regard to this claim).

The trial court noted that petitioner "was sentenced on three charges, and none of the sentences exceeded the statutory limits." See Common Pleas Ct. Op. filed 11/24/03, at 12. The Court explained that petitioner was sentenced to a term of fifteen to thirty (15-30) years in prison on the conspiracy charge and that the standard range under the sentencing guidelines was six to twenty (6-20) years on that offense. Id. (citing 18 Pa. C.S.A. §§ 905, 1103, 1502). The Superior Court noted that "the maximum sentence for conspiracy to commit murder is forty years, where serious bodily injury results." See Pa. Super. Ct. Op. filed 8/30/04, at 6 n.9 (citing 18 Pa. C.S.A. § 1102).

---

[15]Similarly to his second habeas claim, see supra note 14, unlike the habeas petition, petitioner presented this claim in the Pennsylvania courts in the form of alleging **ineffective assistance of counsel** in failing to file a petition for reconsideration of sentence when the court imposed a maximum sentence outside the sentencing guidelines. See Pa. Super. Ct. Op. filed 8/30/04, at 5; Common Pleas Ct. Op. filed 11/24/03, at 11. While the Courts found the ineffective assistance claim without merit in that, among other things, petitioner's "[t]rial counsel did, in fact, file a 'Motion to Modify Sentence,'" the Courts also addressed the underlying claim that the court erred in imposing a sentence outside the guidelines. Id. at 11; see Pa. Super. Ct. Op. filed 8/30/04, at 6-7 (adopting the trial court opinion with regard to this claim).

On the offense of aggravated assault, petitioner was sentenced to a consecutive term of five to ten (5-10) years in prison. See Common Pleas Ct. Op. filed 11/24/03, at 12. The Court explained that the standard range for this offense under the sentencing guidelines was fifty-four to seventy-two (54-72) months in prison. Id. (citing 18 C.S.A. §§ 1103, 2702). The Superior Court noted that "the maximum sentence for aggravated assault is twenty years." See Pa. Super. Ct. Op. filed 8/30/04, at 6 n.9 (citing 18 Pa. C.S.A. § 1103); see also Common Pleas Ct. Op. filed 11/24/03, at 12. Finally, on the possession of instruments of crime offense, petitioner was sentenced to a term of probation of five to ten (5-10) years, where "[t]he standard range under the sentencing guidelines was up to three months, the aggravated range was six months, and the statutory maximum was five years" in prison. Id. (citing 18 Pa. C.S.A. §§ 907, 1104).

Pursuant to 28 U.S.C. § 2254(a), this Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Petitioner is not entitled to habeas relief unless he can demonstrate that he has been denied his federal constitutional rights. Tornowske v. Pennsylvania, 2010 WL 235120, *2 (W.D. Pa. Jan. 15, 2010); see Estelle, 502 U.S. at 67-68; Smith v. Phillips, 455 U.S. 209 (1982). Thus, a writ of habeas corpus is available under § 2254(a) "only on the basis of some transgression of federal law binding on the state courts." Tornowske, 2010 WL 235120, at *2 (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

"Generally, sentencing is a matter of state criminal procedure and does not fall within the purview of federal habeas corpus." Id. at *2. Therefore, "a federal court normally will not review a state sentencing determination that falls within the statutory limit, Williams v.

Duckworth, 738 F.2d 828, 831 (7th Cir. 1984), [cert. denied, 469 U.S. 1229 (1985),] as the severity of a sentence alone does not provide a basis for habeas relief." Tornowske, 2010 WL 235120, at *2 (citing courts of appeal cases from five circuits).

Although Lawson complains that his sentence is excessive in that it exceeded Pennsylvania's sentencing guidelines, "the Third Circuit has held that absent a constitutional violation, a federal court has no power to review a sentence in a habeas proceeding unless it exceeds the statutory limits." See Diaz v. Britton, 2010 WL 2035402, *7 (E.D. Pa. Apr. 29, 2010) (citing Jones v. Superintendent of Rahway State Prison, 725 F.2d 40 (3d Cir. 1984)), adopted by, 2010 WL 2035372, *1 (E.D. Pa. May 20, 2010); Hoagland v. Neubert, 1988 WL 81771, at *2 (D. N.J. Aug. 1, 1988) (citing Jones); see also United States ex rel. Jackson v. Myers, 374 F.2d 707, 711 n.11 (3d Cir. 1967) (the severity of a defendant's sentence alone does not constitute grounds for federal habeas relief). Here, as the Pennsylvania courts point out, Lawson's sentence does not exceed Pennsylvania's statutory limits, see Pa. Super. Ct. Op. filed 8/30/04, at 6-7; Common Pleas Ct. Op. filed 11/24/03, at 12, and habeas relief is unavailable. See, e.g., Diaz, 2010 WL 2035402, at *7 (where "trial court sentenced Petitioner to the statutory maximum, but not over it, this Court has no power to review the trial court's sentencing decision.").

In discussing its reasons for petitioner's sentence, the trial court explained:

> First, defendant was athletically and academically talented and had a family support system that few children have. N.T. [4/4/00,] at 52. This shows that he had the potential and opportunity to lead a law-abiding life. Second, he remained in denial of his guilt, despite the fact that he has a distinctive appearance and was identified in court by eyewitnesses to the shooting. Id. at 52-53. Third, defendant chased and shot an unarmed boy, displaying an utter disregard to the failure

of his life.  Id. at 523.  In that respect, the crime was heinous.  Fourth,
the victim of the shooting is permanently paralyzed, another fact that
makes this crime especially heinous.  Id.  Finally, the crime occurred
in an urban residential area, and the law-abiding citizens of Pottstown
deserve to have a message sent to those who contemplate such crimes
that these acts will not be tolerated.  Id. at 53-54.

See Common Pleas Ct. Op. filed 11/24/03, at 13; see also Pa. Super. Ct. Op. filed 8/30/04, at 6-7

(affirming judgment of sentence on the basis of the trial court's opinion).  The Pennsylvania

courts' decisions upholding petitioner's judgment of sentence are consistent with clearly

established federal law.  See, e.g., Mouzon v. Rozum, 2009 WL 3734131, at *7 (E.D. Pa. Nov. 5,

2009).  The trial court distinctly enunciated its reasons for fashioning a proportional sentence,

and as explained, the sentence fell within the statutory limits.  See, e.g., id.; see also Gall v.

United States, 552 U.S. 38 (2007) (court should explain if sentencing beyond guidelines).

Petitioner's sentence "did not violate the Eighth Amendment or the 'gross

disproportionality' principle."  See Mouzon, 2009 WL 3734131, at *9 (citing Lockyer v.

Andrade, 538 U.S. 63 (2003)).  In Ewing v. California, 538 U.S. 11 (2003), where the defendant

was sentenced to 25 years to life in prison, under the State's "three strikes law," for stealing golf

clubs worth $1200, the Supreme Court found no violation of the Eighth Amendment, reasoning

that, although "Ewing's sentence is a long one . . . it reflects a rational legislative judgment,

entitled to deference, that offenders who have committed serious or violent felonies and who

continue to commit felonies must be incapacitated."  Id. at 30-31; see Mouzon, 2009 WL

3734131, at *9 (quoting Ewing).

In Harmelin v. Michigan, 501 U.S. 957 (1991), the defendant was convicted of

possessing 672 grams of cocaine and was sentenced to life in prison without the possibility of

parole.  Id. at 961.  "Despite being the 'second most severe' sentence in the American criminal justice system, the Supreme Court deferred to the legislative judgment supporting the sentence and determined that life in prison without parole was not 'unusual' and, therefore, not an Eighth Amendment violation."  Mouzon, 2009 WL 3734131, at *9 (quoting Harmelin, 501 U.S. at 988, 994).  It cannot be said that the sentence in this case was "grossly disproportionate to the crime" under clearly established federal law, and petitioner has failed to show that he is entitled to habeas corpus relief with respect to his sentencing claim.  See, e.g., id. at *9 (citing Ewing and Harmelin); see Ewing, 538 U.S. at 21 (quoting Rummel v. Estelle, 445 U.S. 263, 272 (1980)) ("[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.").  This habeas petition should therefore be denied and dismissed.

Under § 2253(c)(1), "an appeal may not be taken to the court of appeals" from the final order in a § 2254 proceeding "[u]nless a . . . judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  "A COA may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. § 2253(c)(2); see Miller-EL v. Cockrell, 123 S. Ct. 1029, 1039 (2003); Slack v. McDaniel, 529 U.S. 473, 483 (2000).  To establish this, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack, 529 U.S. at 484; see Miller-EL, 123 S. Ct. at 1040.

Here, for the aforementioned reasons, a reasonable jurist could not conclude that the Court would be incorrect in denying and dismissing this habeas petition.  See Slack, 529 U.S. at 484.  Since petitioner has not made the requisite showing of the denial of a constitutional right,

the habeas petition should be denied, and a COA should not issue.  <u>See</u> <u>Slack</u>, 529 U.S. at 484.

My Recommendation follows.

## R E C O M M E N D A T I O N

**AND NOW**, this 18th day of June, 2010, upon consideration of the Petition for Writ of

Habeas Corpus under 28 U.S.C. § 2254, and respondent's opposition thereto, for the reasons

provided in the accompanying Report, it is hereby **RECOMMENDED** that the habeas petition

be **DENIED** and **DISMISSED** and that a certificate of appealability should not issue.[16]


 /s/ L. Felipe Restrepo
L. FELIPE RESTREPO
UNITED STATES MAGISTRATE JUDGE

---

[16]Petitioner is advised that he may file objections to this Report and Recommendation. See Local R. Civ. P. 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.